33 A.3d 1242 (2012)
423 N.J. Super. 518
REPOSSESSION SPECIALISTS, Theodore Van Santen and AmeriCredit, Plaintiffs-Appellants,
v.
GEICO INSURANCE COMPANY, Defendant-Respondent.
Annetta Jackson, Plaintiff,
v.
Repossession Specialists Inc., Theodore Van Santen and AmeriCredit, Defendants.
Docket No. A-2712-10T1
Superior Court of New Jersey, Appellate Division.
Submitted November 30, 2011.
Decided January 12, 2012.
*1243 Garrity, Graham, Murphy, Garofalo & Flinn, attorneys for appellants (Frank H. Reimers and Rudolph G. Morabito, East Hanover, on the briefs).
Green, Lundgren & Ryan, P.C., attorneys for respondent (Daniel J. DiStasi and Alexa J. Nasta, Cherry Hill, on the brief).
Before Judges AXELRAD, SAPPPETERSON and OSTRER.
The opinion of the court was delivered by
OSTRER, J.S.C. (temporarily assigned).
We are presented with an issue of contract interpretation. We are asked whether an entity that repossesses an automobile is insured under the omnibus provision of a personal automobile insurance policy that extends coverage to persons who use an owned automobile with the policy holder's permission. We conclude that a repossessor is not a permitted user.

I.
The facts are undisputed. In December 2002, Annetta Jackson took out a six-year loan at 17.95 percent interest to purchase a 2002 Isuzu Rodeo. The retail installment contract provided that in the event of a default by failing to make timely payments, the lender had the right to repossess:
In addition to any rights we may have under law, upon any Default, our rights include ... [t]he right to obtain possession of the Goods, with or without process of law, if you do not deliver them to us. You authorize us to peaceably enter any premises where the Goods may be in order to take possession of the Goods and remove them. You authorize us to use your license plates in removing the Goods to a place of storage. We may take any other things found in the Goods, but will return these things to you if you ask. If you want these things back, you agree to ask us in a letter sent by certified mail within a reasonable time.
The loan was ultimately assigned to AmeriCredit.
After Jackson defaulted, AmeriCredit asked Repossession Specialists (Repossession) in May 2006 to repossess the Rodeo. Just before 3:00 am on May 9, 2006, Repossession's employee Theodore Van Santen entered Jackson's apartment complex's parking lot with his tow truck to take the Rodeo. After hearing the noise of Van Santen's truck, Jackson ran to remove some personal items from the trunk of her car, which was already hooked to the tow truck. Jackson climbed on the tow bar and was trying to unlock the trunk when Van Santen pulled away and Jackson was thrown to the ground, cutting her knee.
Jackson filed suit in April 2008. Repossession's own insurer, New Hampshire Insurance Company, accepted coverage. However, Repossession, Van Santen and AmeriCredit (plaintiffs) also sought coverage from Jackson's insurer, GEICO Insurance Company (GEICO), claiming they were a permitted user of Jackson's auto, and therefore were covered under GEICO's policy.
The GEICO policy[1] provided liability coverage to "an insured," stating that "we will pay damages which an insured becomes *1244 legally obligated to pay because of: (1) bodily injury, sustained by a person, and (2) property damage, arising out of the ownership, maintenance or use of the owned or non-owned auto." (Bold and italics omitted). An "insured" under the policy included Jackson as policy holder and, among others, "[a]ny other person using the auto with your permission. The actual use must be within the scope of that permission." The policy also covered "[a]ny other person or organization for his [or her] liability because of acts or omissions of" a person insured because he or she was using the automobile with permission. The policy excluded claims arising from the use by a person, other than Jackson or a relative, "when he [or she] is employed or otherwise engaged in the auto business."
Jackson's complaint was ultimately dismissed with prejudice in December 2010 after arbitrators found her seventy-five percent liable and she did not reject the award and seek a trial de novo. Meanwhile, GEICO and plaintiffs moved and cross-moved for summary judgment. Plaintiffs argued they were permitted users based on the terms of the policy and the retail installment agreement. GEICO denied that plaintiffs qualified as permitted users. Moreover, GEICO asserted that the so-called auto business exclusion barred coverage.
The trial court granted GEICO's motion, and denied plaintiffs' cross-motion, on December 20, 2010. Although the court held that the auto business exclusion was void under Proformance Ins. Co. v. Jones, 185 N.J. 406, 887 A.2d 146 (2005), the court found that plaintiffs were not entitled to coverage because they were not permitted users. The court reasoned that once Van Santen took possession of the vehicle, Jackson lost custody and control of the vehicle, and therefore could not withhold or grant permission to anyone. Alternatively, the court held that repossession was akin to "conversion, theft or the like," which fell outside permitted use.
Plaintiffs appeal, and present the following points:
PLAINTIFFS WERE PERMISSIVE USERS OF THE RODEO AT THE TIME OF ITS REPOSSESSION AND THEREFORE ARE ENTITLED TO COVERAGE UNDER THE GEICO POLICY INSURING IT.
A. JACKSON HAD GRANTED OPEN-ENDED PERMISSION TO PLAINTIFFS TO REPOSSESS THE RODEO UPON DEFAULT AND HAD NEVER WITHDRAWN THAT PERMISSION.
B. PLAINTIFFS REPOSSESSION OF THE VEHICLE DID NOT CONSTITUTE "THEFT OR THE LIKE" OF THE RODEO.
C. AT THE TIME OF THE INITIAL GRANT OF PERMISSION JACKSON HAD AN OWNERSHIP INTEREST AS WELL AS CUSTODY AND CONTROL OF THE RODEO.
D. JACKSON HAD AN OWNERSHIP INTEREST IN THE VEHICLE AT THE TIME OF THE REPOSSESSION.
We affirm.

II.
GEICO's policy covered the policy holder and "[a]ny other person using the auto with [her] permission." Whether repossessors are covered as permitted users is a question of law subject to our de novo review. See Fastenberg v. Prudential Ins. Co. of Am., 309 N.J.Super. 415, 420, 707 A.2d 209 (App.Div.1998). Our research discloses no case that has addressed the precise issue. The trial court's grant of *1245 summary judgment is also subject to de novo review. Lapidoth v. Telcordia Tech., Inc., 420 N.J.Super. 411, 417, 22 A.3d 11 (App.Div.2011).
We conclude that Repossession, as AmeriCredit's agent, did not use Jackson's vehicle "with permission," as we interpret the policy, because Repossession's use was as of right, and Jackson lacked the power to revoke or prevent Repossession's use. Use as of right pursuant to irrevocable authority is inconsistent with the concept of permission. We differ slightly with the trial court, which reasoned that Repossession lacked permission because Jackson lacked the power to grant or withhold the repossessor's use once her car was taken. We believe Jackson lacked the power to withhold or revoke use even earlieronce she granted her lender a security interest.
As a secured creditor, AmeriCredit was empowered to obtain repossession not only under the contract, but also under the Uniform Commercial Code. See N.J.S.A. 12A:9-609 (stating that "[a]fter default a secured party ... may take possession of the collateral" and may do so "without judicial process if it proceeds without breach of the peace"). Thus, regardless of the repossession provision in the installment credit contract, AmeriCredit was entitled by law to repossess once the lender obtained a security interest in the vehicle. Moreover, once Jackson entered the installment credit contract, she lacked any authority to revoke her lender's right to repossess.
In support of our interpretation, our highest Court has adopted the view that "permission" incorporates the power to withhold consent. See Giroud v. N.J. Mfrs' Cas. Ins. Co., 106 N.J.L. 238, 241, 148 A. 790 (E. & A.1930) ("Consent means... to yield when one has the right, power or will not to do so.") (internal quotations omitted).
Commentators agree that use as of right is inconsistent with permissive use; and the concept of "permission" connotes the power to grant, withhold and revoke use. "`Permission' implies the right to withhold permission, so that, where the use is by right, it is not a use by permission." Patrick D. Kelly, Blashfield Automobile Law & Practice, § 321:42 at 137 (4th ed. 2007). "The permission granted must be in the nature of a revocable license, and implies a right to refuse, and does not extend to relationships in which the donor of permission does not have power to terminate the license." 8 Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 112:6 (rev.3d ed. 1997).
Our conclusion is consistent with public policy and well-settled principles that guide our interpretation of a personal automobile insurance contract. Extending coverage to repossessors as permitted users does not serve an apparent interest of named insureds. See, e.g., Bowler v. Fidelity & Cas. Co. of New York, 53 N.J. 313, 321, 250 A.2d 580 (1969) ("It is fundamental... that courts will interpret insurance policy language liberally in favor of the insured.") To the extent the risks created by automobile repossessors' negligence are borne by the insurers of the repossessed vehicles' owners, those costs will ultimately work their way into the rates of the vehicle owners like Jackson. Yet, individual policy holders like Jackson bear no responsibility in choosing the entity that will repossess their car, and exercise no control over the manner in which repossessors use their cars.
Evident in numerous amendments to our compulsory automobile insurance laws is an intent to control cost and enhance the affordability of compulsory personal automobile insurance in New Jersey. See, e.g., N.J.S.A. 39:6A-1.1 (Automobile Insurance Cost Reduction Act designed in part to *1246 control costs of liability coverage by allowing drivers to satisfy the compulsory insurance requirement by purchasing a "basic" policy under N.J.S.A. 39:6A-3.1b that includes no mandatory liability coverage); N.J.S.A. 39:6A-3.3 adopted by L. 2003, c. 89, § 45 (creating "special" policy allowing certain low income persons to satisfy the compulsory insurance requirement by purchasing a policy with zero liability coverage); Assembly Banking and Insurance Committee, Statement to S. 63, enacted as L. 2003, c. 89 (May 5, 2003) (discussing "comprehensive set of solutions to the automobile insurance availability and affordability challenges facing insurers, consumers, and regulators"); see also Rider Ins. Co. v. First Trenton Cos., 354 N.J.Super. 491, 496, 808 A.2d 143 (App.Div.2002). We should be mindful of contract interpretation that would undermine those affordability goals, which serve the policy holder's interests.
Furthermore, the shift in risk removes a potentially powerful incentive for repossessors to act with care. Businesses typically implement risk management measures to prevent claim-triggering events that would negatively affect their rates. If AmeriCredit's reading of the contract were correct, Jackson's policy would cover and thereby limit Repossession's responsibility for a whole range of negligent actions by its repossessor involving Jackson's vehicle.
Extending coverage to repossessors would also defy the reasonable expectation of a personal automobile insurance policy holder. See, e.g., Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338, 495 A.2d 406 (1985) (stating that courts shall interpret insurance policies "to accord with the reasonable expectations of the insured, regardless of the existence of any ambiguity"). An insured like Jackson may reasonably expect her policy to cover a friend to whom she hands her keys, even if the friend keeps the car longer or drives farther than she intended. See Martusus v. Tartamosa, 150 N.J. 148, 159-160, 696 A.2d 1 (1997) (where insureds' "reasonable expectation was that the initial permission rule would be applied," umbrella policy covered person who used vehicle with permission of insured's son, who was vehicle's primary driver).[2] The same could hardly be said of the unwelcome repossessor.
Our interpretation of the policy is not at odds with the line of cases that have liberally interpreted the omnibus insurance clause to assure coverage for the benefit of innocent victims. See, e.g., French v. Hernandez, 184 N.J. 144, 151, 875 A.2d 943 (2005). See also Verriest v. INA Underwriters Ins., 142 N.J. 401, 414, 662 A.2d 967 (1995) (stating "liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured"); Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 495, 166 A.2d 345 (1960) (policies "are to be construed liberally in favor of the injured"). Although our courts have expansively viewed coverage, "[t]hat does not mean ... that an insurance policy can be stretched beyond all reason to fit a set of facts that fall beyond the reach of the omnibus clause." *1247 French, supra, 184 N.J. at 152, 875 A.2d 943.
A permitted user may often be a licensed driver with no vehicle or insurance of his or her own. Absent coverage from the owner's policy, an innocent victim may lack a private source of insurance. Broad interpretation of an omnibus clause serves the needs of that innocent person. However, repossessors are in the business of transporting other people's vehicles. They or their principals may be expected to carry sufficient insurance in case of injury to third parties. Thus, including repossessors among permissive users should not be essential to assure compensation of the innocent parties they may injure.
Finally, we decline to base our decision on alternative grounds advanced by GEICO. We reject GEICO's argument that Jackson lacked the power to grant permission as she lacked an ownership interest or insurable interest in the car once she had defaulted. First, Jackson did not lose ownership upon repossession and retained a right of redemption. N.J.S.A. 12A:9-623. As she would suffer a financial loss if the vehicle were destroyed after it was repossessed, she retained an insurable interest in the vehicle until it was sold or redeemed. 7 Am.Jur.2d Automobile Insurance § 19 (2007) (individuals who derive a benefit from property's existence or who would suffer loss from that property's destruction have an insurable interest). Also unavailing is GEICO's argument, which the trial court correctly rejected, that the auto business exclusion barred relief to plaintiffs. See Proformance Ins. Co., supra, 185 N.J. at 420, 887 A.2d 146 (finding an auto business exclusion clause void in light of legislative policy). We are also unpersuaded by GEICO's argument, which the trial court adopted as an alternative basis for its decision, that a repossessor's use is akin to "theft or the like," Matits, supra, 33 N.J. at 497, 166 A.2d 345, and therefore not permissive. It would stretch the concept of "theft or the like" beyond its intended meaning to include the actions of a repossessor acting under authority of law.
In sum, we conclude that the repossessor was not a user with permission under the policy. Rather, the repossessor used the policy holder's car as of right, in accord with the installment credit contract and the U.C.C., N.J.S.A. 12A:9-609, and the policy holder lacked the power to revoke the repossessor's authority.
Affirmed.
NOTES
[1] The record before us includes only excerpts of the GEICO policy that were presented to the trial court on the motions.
[2] Our decision does not directly implicate the initial-permission rule, which provides that "if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use...." Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 496-97, 166 A.2d 345 (1960). The rule is designed to avoid the uncertainty in coverage that might result from having to litigate the scope of an owner's initial permission in every case. Id. at 496, 166 A.2d 345. However, in this case, the issue is not whether the use exceeded the scope of initial permission, but whether initial permission was granted at all.